**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

Priority _____
Send _____
Enter _____
Closed _____
JS-5/JS-6 _____
Scan Only _____

| | |
|---|---|
| **CASE NO.:** CV 11-00816 SJO (PLAx) | **DATE:** May 5, 2011 |
| **TITLE:** Karen Prince-Weithorn v. GMAC Mortgage, LLC, et al. | |

========================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Victor Paul Cruz | Not Present |
| Courtroom Clerk | Court Reporter |

**COUNSEL PRESENT FOR PLAINTIFF:**      **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                              Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** [Docket No.19]

This matter is before the Court on Defendant GMAC Mortgage, LLC's ("GMAC") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion") filed on March 9, 2011. (Docket No. 19.) Also on March 9, 2011, GMAC filed a Request for Judicial Notice in Support of GMAC's Motion to Dismiss. (Docket No. 19, Ex. 1.) Plaintiff Karen Prince-Weithorn ("Plaintiff") filed an Opposition on April 11, 2011.[1] (Docket No. 22.) GMAC filed a Reply on April 21, 2011.[2] (Docket No. 24.) The Court found this matter suitable for disposition without oral argument and vacated the hearing set for April 25, 2011. *See* Fed. R. Civ. P. 78(b). For the following reasons, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint is **GRANTED IN PART** and **DENIED IN PART**.

///
///
///

---

[1] GMAC objects to the Opposition filed by Plaintiff as untimely pursuant to Local Rule 7-9. (GMAC's Reply 2:27-28 n.1.) Under Local Rule 7-9, "[e]ach opposing party shall . . . not later than twenty-one (21) days before the date designated for the hearing of the motion . . . serve upon all other parties and file with the Clerk . . . a brief but complete memorandum . . . in opposition thereto." L.R. 7-9. Although Plaintiff filed her Reply on April 11, 2011, less than twenty-one days before the hearing set for April 25, 2011, the Court exercises its discretion and accepts Plaintiff's Opposition.

[2] The Court notes that GMAC's Reply is in violation of the Court's Standing Order. Under the Court's Standing Order, "[n]o reply may exceed five pages." (Civil Standing Order ¶ 19.) GMAC's Reply totals eight pages. (*See generallly* GMAC's Reply.) The Court, however, exercises its discretion and accepts GMAC's Reply.

| | |
|---|---|
| MINUTES FORM 11 | ___ : ___ |
| CIVIL GEN             Page 1 of 10 | Initials of Preparer _____ |

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  CV 11-00816 SJO (PLAx)          DATE:  May 5, 2011

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was the owner of the real property located at 535 Tamarisk Road, Palm Springs, California ("Property").  (Req. for Judicial Notice ("RJN"), Ex. A.)  In July 2007, Plaintiff obtained a $2,332,977 loan from GMAC, which was secured by a deed of trust recorded against the Property.  (*Id.*)  Plaintiff subsequently defaulted on the loan and on April 19, 2010, a Notice of Default and Election to Sell Under Deed of Trust was recorded on the Property.  (*Id.*, Ex. B.)  On July 20, 2010 a Notice of Trustee's Sale was recorded against the Property.  (*Id.*, Ex. C.)

On January 11, 2011, Plaintiff was discharged from bankruptcy.  (First Am. Compl. ("FAC") ¶17; GMAC's Mot. 2:10.)  Plaintiff alleges that she then, through prior counsel, requested a loan modification packet from GMAC.  (FAC ¶ 17.)  In order to be accepted, GMAC must receive a loan modification packet at least seven days prior to the date set for the trustee sale.  (*See id.* ¶ 22.)  Plaintiff alleges that she received the requested loan modification packet on January 13, 2011.  (*Id.* ¶ 19.)  Then on January 18, 2011, Plaintiff alleges that her counsel called GMAC and spoke to a representative named David.  (*Id.* ¶ 20.)  Plaintiff alleges that David told counsel that there was a trustee sale scheduled for January 27, 2011.  (*Id.*)  When counsel told David that a loan modification packet had just been received, Plaintiff alleges that David stated that the trustee sale date would, therefore, be vacated.  (*Id.*)

Plaintiff alleges that her counsel faxed the completed loan modification application to GMAC on January 19, 2011.  (FAC ¶ 21.)  Then on January 21, 2011, Plaintiff alleges that her counsel spoke to GMAC supervisor Jeyar who stated that the application was denied because GMAC did not post receipt of the documents until January 20, 2011,  six days prior to the date set for trustee sale of the Property.  (*Id.* ¶ 22.)  Plaintiff alleges that the GMAC representative told Plaintiff's counsel that GMAC was using the January 20, 2011 date expressly to make the receipt late even though GMAC had received the documents on January 19, 2011.  (*Id.*)  Plaintiff also alleges that the GMAC representative refused to vacate the January 27, 2011 trustee sale date based solely on the late filing.  (*Id.*)  Plaintiff claims that the trustee sale took place as scheduled and that GMAC purchased the property at the sale.  (*Id.* ¶ 23.)

On January 27, 2011, Plaintiff filed a Complaint against GMAC.  (Docket No. 1.)  On March 15, 2011, Plaintiff filed her First Amended Complaint ("FAC"), asserting claims for: (1) breach of contract; (2) promissory estoppel; (3) violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); (4) violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code §§ 1788, *et seq.* ("Rosenthal Act"); and (5) breach of the implied covenant of good faith and fair dealing.  (*See generally* FAC.)  On March 28, 2011 GMAC filed the instant Motion and a Request for Judicial Notice.  (Docket No. 19.) Federal Rule of Evidence 201(b)(2) permits courts to take judicial notice of facts that are "not subject to reasonable dispute" in that they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). A court may take judicial notice of matters of public record.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Here, GMAC requests judicial notice of: (1) a Deed of Trust for the Property recorded on July 11, 2007; (2) a Notice of Default and Election

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 11-00816 SJO (PLAx)      **DATE:** May 5, 2011

to Sell recorded on April 19, 2010; (3) a Notice of Trustee's Sale recorded on July 11, 2007; and (4) a Trustee's Deed Upon Sale recorded on February 24, 2011. (*See generally* RJN.) Judicial notice is appropriate because the documents are public records and are not subject to reasonable dispute. The Court, therefore, takes judicial notice of the aforementioned documents.

II.     DISCUSSION

     A.     Legal Standard

         1.     Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the claims asserted. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003). In considering a motion to dismiss, a court must accept as true the allegations of the complaint in question. *Hosp. Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976). A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). To plead sufficient facts, a party must proffer "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 547. A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557 (internal quotations omitted)). This plausibility standard requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.*

         2.     Motion for a More Definite Statement

Rule 8 requires that every complaint contain "a short and plain statement" of the allegations at issue. Fed. R. Civ. P. 8(a). Under Rule 12(e), a party may move for a more definite statement "[i]f a pleading is so vague or ambiguous that [the] party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). In light of Rule 8's liberal pleading standard, motions for more definite statements should not be granted unless the moving party "literally cannot frame a responsive pleading." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996).

     B.     Motion to Dismiss

         1.     Claim One: Breach of Contract

"A cause of action for damages for breach of contract is comprised of the following elements: (1) the contract[;] (2) plaintiff's performance or excuse for nonperformance[;] (3) defendant's breach[;] and (4) the resulting damages to plaintiff." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th

| | |
|---|---|
| CASE NO.: CV 11-00816 SJO (PLAx) | DATE: May 5, 2011 |

1350, 1367 (2010) (emphasis and internal quotations omitted) (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990)).

      a.    <u>Existence of a Contract</u>

Plaintiff alleges that "GMAC breached its requirements under [EESA]" by failing to: (1) "follow the process required to determine eligibility for [loan] modifications"; (2) "fairly and honestly [review] [Plaintiff's] application for loan modification"; and (3) "keep its promise to withdraw the [trustee] sale date." (FAC ¶ 24.) Plaintiff's breach of contract theory is premised on the idea that EESA and the Troubled Asset Relieft Program, 12 U.S.C. §§ 5211, *et seq.* ("TARP") provide a private right of action against lenders and loan services. (*Id.* ¶¶12-15.) EESA grants the Secretary of the Treasury authority to restore liquidity and stability to the financial system, and to ensure that such authority is used in a manner that "protects home values" and "preserves homeownership." 12 U.S.C. § 5201(2)(A), (B). With authority from EESA, the Secretary of the Treasury created TARP. Under TARP, the Secretary of the Treasury has authority to purchase troubled assets from financial institutions. 12 U.S.C. § 5201(1). "In creating TARP, Congress expressly gave a private right of action to those specifically harmed by the Secretary [of the Treasury] to challenge the actions of the Secretary [of the Treasury]." *Robinson v. Wells Fargo Bank, N.A.*, No. CV 09-2066, 2010 WL 2534192, at *6 (D. Ariz. June 18, 2010). Congress, however, did not provide an express private right of action to those harmed by lenders. *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1185 (N.D. Cal. 2009).

Because there is no express private right of action for TARP fund recipients under EESA, the Court looks to congressional intent to determine if a private right of action was implied. *See Univs. Research Ass'n, Inc. v. Coutu*, 450 U.S. 754, 770 (1981). The court in *Robinson v. Wells Fargo Bank, N.A.*, 2010 WL 2534192, at *6-7, held that Congress did not intend to create a private right of action. Congress instead intended "to limit private action under TARP solely to actions against the Secretary [of the Treasury] as provided in [12 U.S.C.] § 5229, and not extend any obligations or liabilities to those receiving TARP funds." *Pantoja*, 640 F. Supp. 2d at 1185; *accord id.* Particularly, the *Robinson* court found that it was highly "unlikely that Congress absent mindedly forgot to mention an intended private right of action against TARP fund recipients" when it "expressly gave a private right of action against the Secretary [of the Treasury]." 2010 WL 2534192, at *7 (internal quotations omitted).

Neither EESA nor TARP provide a private right of action. Plaintiff's breach of contract claim, therefore, fails as a matter of law. Accordingly, GMAC's Motion to Dismiss Claim One is GRANTED.

      2.    <u>Claim Five: Breach of Covenant of Good Faith and Fair Dealing</u>

"Every contract imposes on each party a duty of good faith and fair dealing in each performance and in its enforcement." *Careau & Co.*, 222 Cal. App. 3d at 1393 (internal quotations omitted). "The covenant of good faith and fair dealing . . . exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 11-00816 SJO (PLAx)          **DATE:** May 5, 2011

made." *Durell*, 183 Cal. App. 4th at 1369 (emphasis and internal quotations omitted). However, "the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992).

Plaintiff does not specifically allege a contract between Plaintiff and GMAC that is the basis for her fifth cause of action. (*See* FAC ¶¶ 45-50.) This cause of action could conceivably be based on EESA and TARP or the alleged oral contract between Plaintiff and the GMAC representative to vacate the January 27, 2011 trustee sale. As previously discussed in Part II.B.1.a., *supra*, neither EESA nor TARP create a contractual duty between Plaintiff and GMAC. Plaintiff, therefore, could not plead a valid claim for breach of the implied covenant of good faith and fair dealing based on EESA or TARP.

Assuming Plaintiff bases her claim on the alleged oral contract between Plaintiff and the GMAC representative to vacate the trustee sale, the Court must determine whether Plaintiff has adequately pled the elements that comprise a breach of contract claim. *See Durell*, 183 Cal. App. 4th at 1369.

        a.    <u>Existence of a Contract</u>

A contract requires: "(1) parties capable of contracting; (2) their consent; (3) a lawful objection; and (4) a sufficient cause or consideration." Cal. Civ. Code § 1550. Under California law, "good consideration" is:

> Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor.

*Id.* § 1605. "[I]f there exists sufficient consideration for an oral modification agreement" to a contract in writing, the contract can be enforceable. *Raekede v. Gibraltar Sav. & Loan Ass'n*, 10 Cal. 3d 665, 673 (1974). "In the absence of consideration, [however,] a gratuitous oral promise to postpone a sale of property pursuant to the terms of a trust deed ordinarily would be unenforceable . . . ." *Id.*

Here, Plaintiff has not alleged facts sufficient to establish good consideration for the oral promise to postpone the trustee sale. Plaintiff has not pled that she conferred or agreed to confer a benefit to the GMAC representative or that the GMAC representative suffered or agreed to be suffered by Plaintiff. (*See generally* FAC) Because Plaintiff has not adequately alleged the existence of good consideration for the oral promise to postpone the trustee sale, the Court cannot find the oral promise to be a valid contract. A claim for breach of the implied covenant cannot survive without the existence of a valid contract. Plaintiff's breach of the implied covenant of good faith and fair dealing claim, therefore, fails as a matter of law.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.: <u>CV 11-00816 SJO (PLAx)</u> | DATE: <u>May 5, 2011</u> |

Accordingly, GMAC's Motion to Dismiss Claim Five is GRANTED.

### 3. Claim Two: Promissory Estoppel

"Where consideration is lacking, a contract may nonetheless be enforceable under the doctrine of promissory estoppel." *Reyes v. Wells Fargo Bank, N.A.*, No. C-10-01667, 2011 WL 30759, at *11 (N.D. Cal. Jan. 3, 2011); *accord Raekede*, 10 Cal. 3d at 672-73 (1974). Under the doctrine of promissory estoppel, "a promisor is bound when he should reasonably expect a substantial change of position, either by act or forbearance, in reliance on his promise, if injustice can be avoided only by its enforcement." *Id.* "The elements of promissory estoppel are[:] (1) a clear promise[;] (2) reliance[;] (3) substantial detriment[;] and (4) damages measured by the extent of the obligation assumed and not performed." *Toscano v. Greene Music*, 124 Cal. App. 4th 685, 692 (2004) (internal quotations omitted); *accord US Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 905 (2005). "To be enforceable, a promise need only be definite enough that a court can determine the scope of the duty, and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Garcia v. World Sav., FSB*, 183 Cal. App. 4th 1031, 1045 (2010) (internal quotations omitted) (finding that a lender's oral promise to postpone a trustee sale was sufficiently definite to support promissory estoppel). In other words, "[t]he promise must . . . be clear and unambiguous in its terms." *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 226 (2011) (internal quotations omitted).

As a preliminary matter, GMAC contends that the statute of frauds precludes enforcement of the alleged oral promise to postpone the trustee sale. (GMAC's Mot. 4:16-17.) "As a general rule, a gratuitous oral promise to postpone a foreclosure sale . . . is unenforceable." *Garcia*, 183 Cal. App. 4th at 1039. However, "[a] party is estopped to assert the statute of frauds as a defense 'where [the] party, by words or conduct, represents that he will stand by his oral agreement, and the other party, in reliance upon that representation, changes his position, to his detriment." *Id.* at 1041 n.10 (quoting *Assoc. Creditors' Agency v. Haley Land Co.*, 239 Cal. App. 2d 610, 617 (1966)). Here, Plaintiff alleges that the GMAC representative told Plaintiff's counsel that the trustee sale would be vacated when they spoke on January 18, 2011. (FAC ¶ 20.) Plaintiff also alleges that "[i]n reliance on [GMAC's] representation, Plaintiff and her prior counsel worked hard to compile and submit the loan application upon the understanding that the sale date would be withdrawn." (*Id.* ¶ 28.) Plaintiff therefore, alleges that the GMAC representative represented that he would stand by his oral agreement and that Plaintiff changed her position in reliance on that representation. *See Garcia*, 183 Cal. App. 4th at 1041 n.10. The statute of frauds, is therefore, inapplicable to the GMAC representative's oral promise to withdraw the trustee sale.

In the FAC, Plaintiff alleges a clear promise, that the GMAC representative stated that because the loan modification packet had just been received by Plaintiff, the trustee sale date would be vacated. (FAC ¶20.) As alleged, this promise is not unclear or ambiguous and is definite enough to determine the scope of the duty created. *See Garcia*, 183 Cal. App. 4th at 1045. As discussed above, Plaintiff also alleged reliance on the oral promise to her detriment. (FAC ¶ 28.) Furthermore, Plaintiff alleges that she "has been damaged by GMAC's actions and

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| **CASE NO.:** CV 11-00816 SJO (PLAx) | **DATE:** May 5, 2011 |

misrepresentations in an amount to be proven at trial." (*Id.* ¶ 31.) Plaintiff has, therefore, sufficiently pled the four elements that comprise a promissory estoppel claim.

Accordingly, GMAC's Motion to Dismiss Claim Two is DENIED.

       4.     <u>Claim Four: Violation of Rosenthal Act</u>

The Rosenthal Act is intended "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts." Cal. Civ. Code § 1788.1 (legislative findings and purpose). The Rosenthal Act sets standards governing debt-collection practices and provides, with limited exceptions, that "every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of" the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"). *Id.* § 1788.17. "One of the FDCPA provisions that is incorporated into the Rosenthal Act is the bar prohibiting debt collectors from using 'any false, deceptive, or misleading representations or means in connection with the collection of any debt . . . .'" *Reyes*, 2011 WL 30759, at *19 (citing 15 U.S.C. § 1692(e).) "[F]oreclosing on a property pursuant to a deed of trust[, however,] is not the collection of a debt within the meaning of the [Rosenthal Act] . . . ." *Benham v. Aurora Loan Servs.*, No. C-09-2059, 2009 WL 2880232, at *2 (N.D. Cal. Sept. 1, 2009); *accord Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1135 (N.D. Cal. 2009); *Ricon v. Reconstr. Co.*, No. 09CV937, 2009 WL 2407396, at *3 (S.D. Cal. Apr. 24, 2009). "[F]oreclosing on a deed of trust[, therefore,] does not implicate the [Rosenthal Act]." *Keen v. Am. Home Mortg. Servicing, Inc.*, 664 F. Supp. 2d 1086, 1095 (E.D. Cal. 2009); *see also Fuentes v. Deutsche Bank*, No. 09 CV 502, 2009 WL 1971610, at *3 (S.D. Cal. July 8, 2009) (granting defendant's motion for judgment because "a residential mortgage is not a debt and a home foreclosure is not a debt collection within the meaning of the statute").

Plaintiff failed to address her Rosenthal Act claim in her Opposition to GMAC's Motion to Dismiss. (*See generally* Pl.'s Opp'n.) Even assuming, Plaintiff opposed GMAC's Motion to Dismiss the Rosenthal Act claim, the Court would nonetheless find that Plaintiff has not sufficiently pled a claim under the Rosenthal Act. The law is clear that foreclosing on a property pursuant to a deed of trust is not a debt collection within the meaning of the Rosenthal Act. Plaintiff, therefore, has not alleged a debt collection in violation of the Rosenthal Act.

Accordingly, GMAC's Motion to Dismiss Claim Four is GRANTED.

       5.     <u>Claim Three: Violation of California UCL</u>

"The [California] UCL prohibits any unlawful, unfair or fraudulent business act or practice." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007) (internal quotations omitted). "An act can be alleged to violate any or all of the three prongs of the UCL--unlawful, unfair, or fraudulent." *Id.* In 2004, the UCL was amended "to provide that a private person has standing to bring a UCL action only if he or she has suffered injury in fact and has lost money or

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** CV 11-00816 SJO (PLAx)      **DATE:** May 5, 2011

property as a result of the unfair competition." *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1381 (2010) (internal quotations omitted).

Here, Plaintiff alleges that she has suffered injury and lost money and property because the trustee "sale took place and . . . GMAC purchased the property at the sale." (FAC ¶23.) Plaintiff, therefore, has standing to a bring a UCL action. Plaintiff also alleges the GMAC violated all three prongs of the UCL. (*Id.* ¶¶ 34-36.) The Court evaluates each prong individually.

         a.      <u>The "Unlawful" Prong of the UCL</u>

"Under its unlawful prong, the UCL borrows violations of other laws . . . and makes those unlawful practices actionable under UCL." *Berryman*, 152 Cal. App. 4th at 1554 (internal quotations omitted). "To state a cause of action based on an unlawful business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law." *Reyes*, 2011 WL 30759, at *21.

Here, Plaintiff alleges that "GMAC's acts and practices . . . are unlawful business practices in that they violate state law including but not limited to violations of the Rosenthal Act." (FAC ¶34.) As previously discussed in Part II.B.4., *supra*, Plaintiff has not pled a viable claim under the Rosenthal Act. Moreover, Plaintiff has not alleged the violation of any other state law with sufficient specificity for her claim under the UCL's unlawful prong to survive the instant Motion. Accordingly, Plaintiff's claim under the unlawful prong of the UCL fails as a matter of law.

         b.      <u>The "Unfair" Prong of the UCL</u>

"The UCL does not define the term 'unfair . . . .'" *Durell*, 183 Cal. App. 4th at 1364. Moreover, "[t]he proper definition of the term 'unfair' in a consumer action is uncertain." *Id.* (quoting *Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999)). Courts have applied three different standards in assessing claims brought under the "unfair" prong of the UCL: (1) the balancing test; (2) the tether test; and (3) the FTC test. *Ferrington v. McAfee, Inc.*, No. 10-CV-01455, 2010 WL 3910169, at *11-12 (N.D. Cal. Oct. 5, 2010). In *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,* 20 Cal. 4th at 187 n.12, the California Supreme Court explicitly declined to apply the balancing test to consumer actions. It adopted a test for actions in which competitors allege anticompetitive practices but made clear that "[n]othing [they] [said] relates to actions by consumers." *Id.* Although the Ninth Circuit has not explicitly stated its preference, it seems to have rejected the application of the FTC test. *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007). Moreover, the tether test has recently been found to be "more in line with the California Supreme Courts reasoning in *Cal-Tech*." *Sanchez v. Bear Stearn Residential Mortg. Corp.*, No. 09-CV-2056, 2010 WL 1911154, at *7 (S.D. Cal. May 11, 2010). The tether test establishes "that the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003) (internal quotes omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

**CASE NO.:** CV 11-00816 SJO (PLAx)      **DATE:** May 5, 2011

Here, Plaintiff alleges that GMAC's actions constitute unfair business practices under the UCL.[3] (FAC ¶ 35(e).) Plaintiff also alleges that GMAC's actions violated the policy behind EESA and TARP. (*Id.*) The purpose of EESA was to grant the Secretary of the Treasury authority to restore liquidity and stability to the financial system. 12 U.S.C. § 5201. Specifically, EESA was intended to "protect home values" and "preserve homeownership." *Id.* With the authority derived from EESA, the Secretary of the Treasury enacted TARP to "maximize assistance for homeowners." 12 U.S.C. § 5219. TARP seeks to "minimize foreclosures" and "facilitate loan modifications to prevent avoidable foreclosures." *Id.* Plaintiff alleges that the GMAC representative stated that the loan modification packet was received and that the trustee sale date would be vacated. (FAC ¶ 20.) Plaintiff further alleges that a GMAC representative informed her that GMAC deemed the loan modification packet received the day after it was faxed "expressly to make the receipt late." (*Id.* ¶¶ 21-22.) Plaintiff, therefore, alleges conduct contrary to the policies tethered to EESA and TARP with sufficient specificity for her claim under the UCL's unfair prong to survive the instant Motion. Accordingly, Plaintiff's claim under the unfair prong of the UCL does not fail as a matter of law.

         c.      <u>The "Fraudulent" Prong of the UCL</u>

To state a cause of action under the fraudulent prong of the UCL, it is only necessary to show that "members of the public are likely to be deceived." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1223 n.8 (2010) (internal quotations omitted). "Allegations of actual deception [and] reasonable reliance . . . are unnecessary." *Comm. on Children's Tel. Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983), *superseded by statute on other grounds as recognized in Californians for Disability Rights v. Mervyn's LLC*, 39 Cal. 4th 223 (Cal. 2006). Claims under the UCL fraudulent prong must, however, meet the heightened pleading requirement of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Under Rule 9(b), "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). To meet this standard, the complaint must allege "particular facts going to the circumstances of the fraud, including time, place, persons, statements made and an explanation of how or why such statements are false or misleading." *Morris v. BMW of N. Am., LLC*, No. C 07-02827, 2007 WL 3342612, at *3 (N.D. Cal. Nov. 7, 2007).

Here, Plaintiff alleges that "GMAC's acts and practices . . . constitute fraudulent business practices." (FAC ¶ 36.) Specifically, Plaintiff alleges that she relied upon the following deceptive statements and actions by GMAC: (1) "misrepresentations and omissions of material fact

---

[3] Specifically, Plaintiff alleges that GMAC: (1) "[failed] to perform loan-servicing functions consistent with its responsibilities to Plaintiff"; (2) "[failed] to supervise properly its agent and employees"; (3) "[failed] to modify permanently loans and/or provide alternatives to foreclosure and using unfair means to keep Plaintiff from being able to apply for a loan modification"; (4) "[made] inaccurate calculations and determinations of Plaintiff's eligibility for permanent modification"; and (5) "[engaged] in acts and practices in violation of all of the laws and regulations put in place by the Treasury Department aimed at avoiding the very foreclosure that Plaintiff ultimately and illegally suffered." (FAC ¶ 35.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| CASE NO.:   <u>CV 11-00816 SJO (PLAx)</u> | DATE:   <u>May 5, 2011</u> |

regarding the status of Plaintiff's loan modification application"; (2) "misrepresentations and omissions of material fact that induced Plaintiff to make and compile loan modification application packet to no avail"; and (3) "betray[al of] Plaintiff's trust that the sale date of her house would be withdrawn." (*Id.*)  Plaintiff also alleges a January 18, 2011 phone conversation in which a GMAC representative stated that the trustee sale date would be vacated.  (*Id.* ¶ 20.)  Moreover, Plaintiff alleges that a "GMAC representative told Plaintiff's counsel that GMAC was using [a later receipt date] expressly to make the receipt late."  (*Id.* ¶ 22.)  Plaintiff has, therefore, alleged particular facts going to the circumstances of the fraud.  Plaintiff's claims are pled pursuant to Rule 9(b)'s heightened pleading standards.  Accordingly, Plaintiff's claim under the fraudulent prong of the UCL does not fail as a matter of law.

Plaintiff has sufficiently pled claims under the unfair and fraudulent prongs of the UCL. Accordingly, GMAC's Motion to Dismiss Claim Three is DENIED.

      C.     <u>Motion for a More Definite Statement</u>

In the alternative, GMAC asserts that "[s]hould any of Plaintiff's claims survive . . . the Court should require a more definite statement." (GMAC's Mot. 9:14-16.)  As discussed in Parts II.B.3. and II.B.5., *supra*, Plaintiff has sufficiently pled Claims Two and Three.  As pled in the FAC, these claims meet Rule 8's pleading standard and are not so vague or ambiguous that GMAC cannot reasonably be required to frame a responsive pleading.  *See* Fed. R. Civ. P. 8, 12(e).  Moreover, Plaintiff's claim under the fraudulent prong of the UCL meets Rule 9(b)'s heightened pleading standard.  Accordingly, GMAC's Motion for a More Definite Statement is DENIED.

III.     <u>RULING</u>

For the foregoing reasons, GMAC's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** and Plaintiff's Claims One, Four, and Five are **DISMISSED WITH PREJUDICE**.  Defendant GMAC's Motion for a More Definite Statement is **DENIED**.  Defendant is ordered to file an answer on or before May 20, 2011.

IT IS SO ORDERED.